September 20, 2018

**Via ECF**
Honorable Debra Freeman
United States Magistrate Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *Vinas et al. v. Procida Construction Corp. et al.*; 18-cv-01699 (DF)

Dear Magistrate Judge Freeman:

      Plaintiffs Andres Vinas ("A. Vinas") and Jhon Vinas ("J. Vinas") (collectively "Plaintiffs") and Defendants Procida Construction Corp. ("Procida"), P. Mejias Cleaning Service ("PMCS") and Pedro Mejias ("Mejias") (collectively "Defendants") request that Your Honor approve the settlement reached in this matter. A copy of the proposed settlement agreement is annexed hereto as Exhibit A.

**Overview**

      Procida is a full-service contracting and construction management firm. Procida performs construction projects in the tri-state area. Procida operates out of two offices. Procida's main office is located in the Bronx, New York and its satellite office is in Atlantic City, New Jersey. Due to the size of some of its construction projects, Procida sometimes subcontracts some of the work to smaller construction companies, like PMCS.

      PMCS is one of the construction companies that Procida uses as a subcontractor. PMCS is run by Pedro Mejias. From 2014 through 2018, Procida and PMCS collaborated with each other on various prevailing wage projects in Manhattan and the Bronx. During this time period, Plaintiffs worked (with breaks in employment) on behalf of both Procida and PMCS.

      While employed by PMCS, A. Vinas worked on various public works projects, including projects on behalf of the New York City Department of Housing Preservation and Development and/or the New York City Housing Authority. J. Vinas also worked on public work projects on behalf of PMCS. For some of the public projects that Plaintiffs worked on, PMCS was the subcontractor for Procida.

There was a factual dispute between the parties as to the type of work Plaintiffs performed on the relevant prevailing wage projects, as the type of work Plaintiffs were found to have performed would impact their potential recovery. Plaintiffs asserted that they performed work as painters. Defendants, however, argreed that Plaintiffs performed the work of painters, but in a different classification, which requires payment of a lower prevailing wage rate.

Plaintiffs believe they would recover approximately $107,000 if successful at trial. This amount includes unpaid overtime wages, liquidated damages for overtime owed on private jobs, prejudgment interest for overtime owed for private jobs, and prevailing wages and supplemental benefits owed. Defendants argued that they paid Plaintiffs for all hours worked and paid them the applicable prevailing wage rate.

## History of Lawsuit

On February 23, 2018, Plaintiffs commenced this action against Procida, P. Mejias Cleaning Service, and Mejias. Plaintiffs sued for unpaid overtime under the Fair Labor Standards Act ("FLSA") and failure to pay prevailing wages and benefits under New York common law (breach of contract) and the New York Labor Law ("NYLL").

On May 31, 2018, the parties appeared for their initial case conference before Judge Jesse Furman. The parties then exchanged paper discovery. A dispute arose with respect to the Rule 30(b)(6) deposition of PMCS. *See,* Dkt No. 33. Shortly after Plaintiffs wrote to the Court as it related to the issue of the Rule 30(b)(6) deposition, the parties reached a settlement in principle.

## Fairness and Reasonableness of the Settlement

The settlement sum is $85,000 and was apportioned according to the number of hours each Plaintiff worked, with one-third of the total settlement payable to Plaintiffs' counsel for their fees and expenses. J. Vinas worked approximately twice as many hours as A. Vinas and will receive a settlement share approximately twice as large as A. Vinas. The settlement agreement provides that the settlement amount will be allocated as follows: Plaintiffs will receive $56,288.83 and counsel will share the remaining $28,711.17 for their fees and expenses. Plaintiffs' counsel's expenses included the filing fee ($400) and service on Defendants ($166.75) for a total of $566.75. Thus, after expenses, Plaintiffs' counsel is seeking $28,144.42. This equates to 1/3 or 33 and 1/3% of the settlement. As a court in this Circuit recently approved a settlement fund of 35% for the plaintiff's attorneys, we respectfully submit that an allocation of the traditional 33 and 1/3% should be approved. *Vidal v. Eager Corp.*, 2018 U.S. Dist. LEXIS 42113, at *4-5 (E.D.N.Y. March 13, 2018); *See also, Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 50 F.3d 229, 239 (2d Cir. 2007); *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp.2d 2d 164, 178 (E.D.N.Y. June 25, 2012) (awarding fees in the amount of one-third of the total settlement); *Reyes v. Buddha-Bar NYC*, 2009 U.S. Dist. LEXIS 45277, at *14 (S.D.N.Y. May 29, 2009) (awarding fees in the amount of 33% of the total settlement).

The proposed settlement division is as follows:

> Plaintiff J. Vinas: $37,410.29
> Plaintiff A. Vinas: $18,878.55
> Attorneys' fees and costs: $28,711.17

Under *Cheeks* and its progeny, a court should consider the totality of the circumstances, including but not limited to the below factors, in determining whether a proposed settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion.

*Beckert v. Ronirubinov*, No. 15 CIV. 1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015) (*citing Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

In this case, as a preliminary matter, the "agreement is the product of arm's length bargaining between experienced counsel" and involves no "possibility of fraud or collusion." *Id.* As for the range of recovery, each Plaintiff will receive nearly all of the wages they were allegedly owed. Since Defendants argue Plaintiffs were paid all of the wages they were due, they could have recovered nothing. Hence, this settlement is more than reasonable.

This settlement enables the parties to "avoid both the anticipated burdens and expenses in establishing their respective claims and defenses." *Id.* Since the commencement of this lawsuit, Plaintiffs have been able to find new employment where they are expected to work each weekday. Further litigation, which would include deposition preparation, depositions, and trial, would require Plaintiffs to miss valuable time at work. Moreover, Plaintiffs are low-wage workers with limited financial means and families they help support. They are eager to be made whole as soon as possible as a result of this case, which is what this settlement achieves. This settlement will spare Defendants additional legal fees and expenses, prevent the further accrual of Plaintiffs' attorneys' fees and relieve Defendants of the burden of further defending a federal court action.

Both sides faced litigation risks by continuing this litigation. Plaintiffs possess limited proof of the hours they worked and what tasks they performed on the prevailing wage projects. Although each Plaintiff's testimony is sufficient, the fact finder is not bound by that recollection and could find that Plaintiffs did not perform the tasks they claimed and worked fewer hours than they allege. *See Doo Nam Yang v. ACBL Corp.,* 427 F.Supp.2d 327, 335 (S.D.N.Y. 2005) ("Because defendants here did not produce admissible records of the hours plaintiff worked, plaintiff must produce sufficient

evidence to show the hours he worked as a matter of just and reasonable inference. Furthermore, it is possible for plaintiff to meet this burden by relying on his recollection alone. . .") (internal quotations and citations omitted). Moreover, Defendants were prepared to offer evidence from co-workers to challenge Plaintiffs' claims that they worked overtime and on the public job sites. By litigating this matter at trial, Defendants risked that a jury would award Plaintiffs back pay and overtime pay at the prevailing wage and benefit painter rate, liquidated damages under the FLSA and NYLL, damages under Sections 195(1) and 195(3) of the NYLL, substantial attorneys' fees and prejudgment interest. The agreed upon settlement allows each side to avoid these risks while also making Plaintiffs whole.

## Work Performed by Plaintiffs' Counsel

While the case settled prior to depositions, the attorneys performed critical work. Plaintiffs' counsel met a number of times with Plaintiffs and diligently researched the corporate Defendants' respective businesses and the prevailing wage projects in question, as well as the overall strength of Plaintiffs' claims. Uncovering enough facts to support a claim of joint employer liability was critical to resolving this case. In addition, Plaintiffs' counsel drafted and served document requests and reviewed Defendants' responses. Plaintiffs' counsel spent a great deal of time focusing on proving that Plaintiffs performed prevailing wage work and were entitled to damages. This time included the drafting and analysis of various spreadsheets setting forth the avenues of potential recovery. Draft notices were then prepared but ultimately not needed because the parties reached a settlement.

### Attorneys' Fees and Counsel's Qualifications

Courts regularly approve attorneys' fees of one-third of the settlement amount in non-class FLSA cases. *See, Karic v. Major Automotive Companies, Inc.,* 2016 WL 1745037 at *8 (E.D.N.Y. Apr. 27, 2016) (citing cases).

Plaintiffs' retainer agreement with the undersigned counsel provides for a contingency fee of one-third of any settlement reached, exclusive of costs and disbursements.[1]  Here, Plaintiffs' counsel seeks the accepted amount of one-third of the settlement, or 33 and 1/3% exclusive of their expenses.

Plaintiffs' counsel Bruce Menken has spent 19.45 hours and an associate at the firm, Marielle Moore, spent 28.8 hours working on this case. [2]  He does not have a single billing rate because he represents clients of widely differing socioeconomic status. As was true in this case and the significant majority of wage and hour cases, he performs litigation almost invariably on a contingency basis. With respect to people who can afford his full fee, he currently charges and is paid $600 per hour. This is the hourly rate

---

[1] As referenced above, Plaintiffs incurred $566.75 in expenses (which does not take into account photocopying, printing, and travel expenses)

[2] Marielle Moore is a 2014 magna cum laude graduate of the University of Miami Law School.

he commands in the relevant marketplace given his experience and expertise. *See,* Ex. B., Menken Retainer Agreement.

Mr. Menken has been practicing law for thirty-one years. After graduating from Brooklyn Law School in 1986, he worked in the non-profit sector for seven years. Since 1993, he has been affiliated with or a partner in various small New York City law firms, primarily representing plaintiffs in employment and civil rights cases. In 1998, along with three other attorneys, Mr. Menken founded what ultimately became Beranbaum Menken LLP ("the firm"). The firm, which currently has four partners and two associates, concentrates its practice in plaintiff-side employment law and civil rights litigation. In 2012, Magistrate Judge Steven M. Gold approved a settlement of some of the claims in *Ramos et al. v. Simplex Grinnell LP*, 09 Civ. 0981 (SMG), a wage and hour class action, including an attorneys' fee award that provided for a $500 hourly fee for Mr. Menken in 2011 and 2012. Also in 2012, in *Clover v. Shiva Realty of Mulberry, Inc.*, et al., 2011 WL 1832581 (May 13, 2011, S.D.N.Y.), a small multi-plaintiff wage and hour case, District Judge Robert P. Patterson awarded fees to Menken and a former associate of the firm at the hourly rates of $500 and $300, respectively. Finally, in 2015, Magistrate Judge Gold approved a further settlement in *Ramos* that provided for a $600 hourly fee for Mr. Menken's work.

Marielle Moore is an associate at Beranbaum Menken LLP. Before joining the firm, Moore was a policy analyst at the Office of the Inspector General for the NYPD, a New York City government agency. Ms. Moore graduated *magna cum laude* from the University of Miami School of Law in May 2014. Since joining Beranbaum Menken LLP, Ms. Moore has collaborated with Mr. Menken on several wage and hour cases. The firm currently invoices clients for work Ms. Moore does at $300 per hour.

Mr. Aronauer is the managing partner of The Law Offices of Jacob Aronauer. Mr. Aronauer has been practicing law since 2005 and started his own firm in 2013. Since he started his own law firm, Mr. Aronauer's practice has primarily focused on wage and hour law. Mr. Aronauer has handled close to 100 wage and hour matters. In 2018, Mr. Aronauer was voted a "Rising Star" in the New York area by Super Lawyers. Mr. Aronauer's hourly rate is $350 an hour. This hourly rate is what Mr. Aronauer charges his management-side clients. Paralegals in this case employed by Mr. Aronauer's firm charged $150 per hour.[3]

## Conclusion

Court approval of an FLSA settlement is appropriate "when [the settlement] [is] reached as a result of contested litigation to resolve bona fide disputes." *Johnson v. Brennan*, No. 10-cv-471, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679, F.2d 1350, 1353 n. 8 (11th Cir. 1982)).

---

[3] Plaintiffs' counsel will provide time records and expenses *ex parte* for in camera review at the Court's request, if considered necessary.

Given the conflicting evidence, the quality of the evidence and counsel and the allocation of the burden of proof on Plaintiffs, the settlement represents a reasonable compromise with respect to contested issues. We jointly request the settlement agreement's approval. *See Reyes v. Altamarea Group, LLC*, 10-cv-6451 (RLE), 2011 WL 4599822 at *6 (S.D.N.Y. Aug. 16, 2011) (Ellis, M.J.).

Respectfully submitted,

Bruce Menken
Marielle Moore
Jacob Aronauer
*Attorneys for Plaintiffs*

cc: **Via ECF**
    All attorneys on record

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

IT IS HEREBY STIPULATED AND AGREED between Andres Vinas and Jhon Vinas (jointly hereafter referred to as "Releasors" or "Employees") and Procida Construction Corp. ("Procida"), P. Mejias Cleaning Service ("PMCS") and Pedro Mejias ("Mejias") (collectively "Releasees") and any affiliated entity of Releasees, including any sister company, subsidiary or parent company, any officer, shareholder or member of the Releasees's Board of Directors and any agents, employees, principals, partners, officers, successors, and assigns of Releasees, both individually and in their official capacities this ___ day of September, 2018, in return for the good and sufficient consideration set forth below, Releasors and Releasees agree to resolve all claims against each other, as follows:

1.      Releasee Procida shall pay Releasors a total sum of twenty-five thousand dollars and no cents ($25,000.00) and Releasees PMCS and Mejias shall pay Releasors a total sum of sixty thousand dollars and no cents ($60,000.00) for a total of eighty-five thousand dollars and no cents ($85,000.00) payable as follows:

A.      Within seven (7) days after the Court has accepted these terms of settlement, Procida will issue a check made payable to Beranbaum Menken, LLP in the gross amount of twelve thousand five hundred dollars and no cents ($12,500.00). Within thirty (30) days thereafter Procida will issue another check payable to Beranbaum Menken, LLP in the gross amount of twelve thousand five hundred dollars and no cents ($12,500.00). It is understood and agreed that upon payment of the $25,000.00 Procida shall have no further liability to Releasors whether under this agreement or otherwise. Procida is not responsible for any further payment upon default of payment by Releasees PMCS or Mejias.

B.      Within seven (7) days after the Court has accepted these terms of settlement, PMCS will issue a check made payable to Beranbaum Menken, LLP in the gross amount of six thousand five hundred dollars and no cents ($6,500.00). Within thirty (30) days thereafter, PMCS will issue another check payable to Beranbaum Menken, LLP in the gross amount of six thousand five hundred dollars and no cents ($6,500.00).

C.      The balance due to Releasors in the amount of forty-seven thousand dollars and no cents ($47,000.00) shall be paid by PMCS to Beranbaum Menken, LLP in

twenty-four (24) payments, with the first payment in the amount of one thousand nine hundred and fifty-eight dollars and forty-one cents ($1,958.41), payable thirty (30) days after it issues the second check specified in Paragraph 1(B) above. For twenty-three (23) months thereafter, the amount of each payment shall be one thousand nine hundred and fifty-eight dollars and thirty-three cents ($1,958.33) Each of the twenty-three (23) subsequent checks shall be issued thirty (30) days after the due date for the prior check.

      D.      The amounts paid by Procida and PMCS as set forth in Paragraph 1(A) and 1(B) respectively shall be paid upon collection by Beranbaum Menken LLP in full to Releasors, representing payment in full for all prevailing wages and supplements due Releasors in accordance with New York State Labor Law §220, based on the hours worked by Releasors on the Public Work Projects known as Draper, Lynn, Solis Manor and TP West. Releasors acknowledge that through this settlement agreement they are being paid for all prevailing work.  and  acknowledge and agree that the hours worked, amounts paid and amounts due as set forth in the spreadsheet annexed hereto as Exhibit 1 are accurate.  In accordance with that Exhibit 1 Releasor Andre Vinas shall be paid the gross amount of one thousand eight hundred fifty five dollars and 28 cents ($1855.28) and Jhon Vinas shall be paid the gross amount of thirty six thousand three hundred forty two dollars and forty three cents ($36,342.43) In total Andre Vinas shall be paid the gross amount of eighteen thousand eight hundred seventy-eight dollars and fifty-five cents ($18,878.55) and Jhon Vinas shall be paid the gross amount of thirty-seven thousand four hundred ten dollars and twenty-nine cents ($37,410.29).  Plaintiffs' counsel shall receive twenty-eight thousand seven hundred eleven dollars and seventeen cents ($28,711.17).

      E.      Releasee Procida may issue an IRS tax form 1099 regarding this payment to Beranbaum Menken, LLP in the amount of twenty-five thousand dollars and no cents ($25,000.00).  Releasee PMCS may issue an IRS tax form 1099 regarding payments made in each applicable calendar year pursuant to paragraphs 1B and 1C.  Beranbaum Menken shall be responsible for distributing settlement funds to the Releasors and issuing appropriate IRS tax forms 1099 to Releasors for all settlement funds distributed to Releasors, including both settlement funds paid by Procida and settlement funds paid by PMCS.  Releasors shall be solely responsible for payment of any income taxes due for settlement funds distributed to Releasors.

F.    Concurrently with the execution of this Agreement, Releasees shall execute and deliver to Releasors' counsel a confession of judgment ("Confession of Judgment") in the form annexed hereto as Exhibit A and B. Plaintiffs' counsel shall be entitled to recover reasonable attorneys' fees for time spent to enforce the settlement agreement. The Parties hereby acknowledge and agree that the Confession of Judgment will be held in escrow by Releasors' counsel, and will not be entered and/or filed at any time other than (i) in the event that Releasees fail to make payment as set forth above, and (ii) Releasees fail to cure such default within ten (10) days of receipt of written notice to be delivered to Defendant's counsel via electronic mail at: (Thomas J. Bianco) tbianco@meltzerlippe.com and/or (Michael Chong) mkchong@mkclawgroup.com. Any such Notice of Default shall be deemed received the day it is electronically mailed.

2.    In return for the consideration described above, Releasors and Releasees release and forever discharge each other, their agents, employees, successors, and assigns, and all affiliated business entities, both individually and in their official capacities, from any and all claims, causes of action, suits, back-wages, benefits, attorneys' fees, pain and suffering, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, charges, complaints and demands whatsoever, in law, or equity, of any and every kind, nature and character, known or unknown, arising under the Fair Labor Standards Act of 1938, 29 U.S.C. §§201, et seq., as amended, and related regulations, the New York Labor Law and related regulations promulgated by the NYS Commissioner of Labor, including any claim under New York Labor Law Article 8, and any other claims for alleged unpaid wages, unpaid minimum wage, unpaid overtime compensation, failure to provide required notices and/or wage statements, liquidated damages, interest, costs, penalties or attorneys' fees under any federal, state or local laws, as well as any claims for retaliation pursuant to the FLSA, 29 U.S.C. §215, and the NYLL, Labor Law §215, based upon any conduct occurring from the beginning of the world to the date of the Releasor's execution of this Agreement, against each other, their agents, successors and assigns, both individually and in their official capacities, from the beginning of the world to the

date of this Agreement. It is understood and agreed that Releasees Procida, PMCS and Mejias do not release each other from any claims pursuant to this Paragraph 2.

3.    Releasors promise and represent that they will withdraw, with prejudice, or stipulate to dismiss with prejudice, any and all outstanding administrative complaints or charges, filed with federal, state and local agencies/administrative bodies arising out of the wages paid each and/or any Releasor by Releasees and will also withdraw with prejudice all judicial actions, as well as any and all other lawsuits, claims, demands, appeals or actions pending against Releasees (as defined above) arising out of the wages paid any Releasor by Releasees, including, but not limited to the Complaint pending in the United States District Court for the Southern District of New York, bearing Case Number 1:18-cv-01699, and will not file any other administrative or judicial complaints, charges, lawsuits, claims, demands, appeals or actions of any kind based on the wages paid Releasors during their individual employment with Releasee PMCS or their assignment to work on Prevailing Wage projects where Procida acted as the general contractor.

Nothing in this Agreement shall be construed to restrict any communication or participation Releasors may have with any agency of the United States government, subdivision thereto, or any State or Municipal government agency charged with the enforcement of any law. Releasors understand that although they are not prohibited from filing a charge or complaint against Releasees with any agency of the United States government, any subdivision thereto, or any State or Municipal government agency charged with the enforcement of any law by virtue of this Agreement, Releasors waive any right to recover monetary damages in any charge, complaint or lawsuit filed by Releasors or anyone else on Releasor's behalf.

In the event any Releasor is subpoenaed to testify concerning wages paid by Releasees, they will immediately notify Releasees to permit Releasees a reasonable opportunity to seek to quash or modify any such subpoena.

4.    Releasors agree and understand that nothing contained in this Agreement and Release is an admission by Releasees of any liability, breach of duty or unlawful conduct whatsoever or violation of any local, state or federal law, regulation or ordinance.

4

5.      This Agreement and Release may not be modified, altered or changed except upon express written consent of both Releasors and Releasees.

6.      **Releasors have been and are hereby advised to consult legal counsel regarding this Agreement and Release.   Each Releasor represents that he has consulted legal counsel regarding this Agreement and Release.**  Each Releasor further represents that after having had a full opportunity to review and consider the terms and conditions of this Agreement and Release, and having discussed them with any member of any of his immediate family, counsel or financial advisor of his own choosing, and having had sufficient time to review and consider this Agreement and Release, he fully understands all of the provisions of this Agreement and Release and has executed same freely and voluntarily.

7.      This Agreement and Release contains the parties' entire agreement, and there are no agreements or representations that are not set forth herein.   All prior negotiations, agreements, and understandings of the parties are superseded by this Agreement and Release.

8.      Each Releasor shall execute any other instruments and/or documents that are reasonable or necessary to implement this Agreement and Release.

9.      No ambiguity in this Agreement and Release may be construed against the drafter.

10.     The entirety of this Agreement and Release is binding upon each Releasor, his heirs, executors, administrators, agents, successors, and assigns, but each Releasor's obligations and right to any payments hereunder are not assignable by said Releasor without the express written consent of Releasees.

11.     This Agreement and Release shall be subject to and governed by the laws of the State New York.   Any action to enforce the terms of this Agreement and Release must be brought in the Supreme Court of the State of New York, County of New York or the United States District Court for the Southern District of New York and all parties hereto agree to submit to the personal jurisdiction of said Courts.

12.     If any term or provision of this Agreement and Release or the application thereof to any person or circumstance, shall to any extent be found invalid or unenforceable, the remainder of the Agreement and Release, or the applications of such

term or provisions to persons or circumstances other than to those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement and Release shall be valid and be enforced to the fullest extent permitted by law.

13.    Releasors shall execute any other instruments and/or documents that are reasonable or necessary to implement this Agreement and Release.

14.    Each of the covenants contained herein is a separate and independent covenant. A breach, finding of unenforceability or waiver of any one covenant herein (or of any other covenant or agreement between these parties) shall not relieve either party of any remaining obligations hereunder.

15.    In the event of a tax assessment by any federal, state or local taxing authority, with respect to any alleged failure to make all required deductions or withholding from the sums to be paid hereunder to Releasor as part of this Agreement and Release, Releasor shall pay his own share (as a former employee) of that assessment. Releasor also agrees to pay or indemnify and hold Releasees harmless for and from any and all related withholding taxes, interest or penalties incurred by Releasees, which they may be required to pay to any taxing authorities relating to any payments made to Releasor pursuant to this Agreement.

16.    This Agreement and Release may be executed in counterparts.

IN WITNESS WHEREOF, the Releasor and Releasees hereunto set their hands this __ day of September, 2018.


Procida Construction Corp.

By _____
     Mario Procida

STATE OF NEW YORK    )
                     ) ss:
BRONX COUNTY         )

On this _____ day of September, 2018, before me personally came Mario Procida to me known and known to me to be the individual described in and who executed the foregoing Agreement, and he, being duly sworn, did depose and say that he

was an officer of Procida Construction Corp. and that he executed said Agreement on behalf of said corporation at the direction of its Board of Directors.

_____
Notary Public

P. Mejias Cleaning Service, Inc.

By: _____
Pedro Mejias

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF KINGS      )

On the _____ day of September, 2018, before me personally came Pedro Mejias to me known to be the individual described in and who executed the foregoing instrument and he, being duly sworn, did depose and say that he was an officer of P. Mejias Cleaning Service, Inc. and that he executed said Agreement on behalf of said corporation at the direction of its Board of Directors.

_____
Notary Public

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF KINGS      )

On the _____ day of September, 2018, before me personally came Pedro Mejias, to me known to be the individual described in and who executed the foregoing instrument and he did duly acknowledge to me that he executed same.

_____
Notary Public

_____
Andres Vinas

STATE OF NEW YORK    )
                     ) ss:

COUNTY OF KINGS          )

On the _____ day of September, 2018, before me personally came Andres Vinas, to me known to be the individual described in and who executed the foregoing instrument and he did duly acknowledge to me that he executed same.

_____
Notary Public

_____
Jhon Vinas

STATE OF NEW YORK       )
                        ) ss:
COUNTY OF KINGS         )

On the _____ day of September, 2018, before me personally came Jhon Vinas, to me known to be the individual described in and who executed the foregoing instrument and he did duly acknowledge to me that he executed same.

_____
Notary Public

849841-1                    8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

ANDRES VINAS AND JHON VINAS ,

                               Plaintiff,

**18-cv-01699 (DCF)**

      -against-

**AFFIDAVIT OF
CONFESSION OF
JUDGMENT**

PROCIDA CONSTRUCTION CORP.,
P. MEJIAS CLEANING SERVICE and
PEDRO MEJIAS,

                          Defendants.

------------------------------------------------------------------------X

STATE OF NEW YORK    )
                      ): ss:
COUNTY OF _____ )

PEDRO MEJIAS , being duly sworn, deposes and says:

1. I am a Defendant in the above-entitled action.

2. I currently reside in ____County, New York.

3. I, an individual in the above-entitled action, on behalf of Defendant P. Mejias Cleaning Service and myself individually, hereby confess judgment in this Court in favor of the Plaintiffs Andres Vinas and Jhon Vinas in an amount of Sixty Thousand Dollars and Zero Cents ($60,000.00) minus the amount of partial payments made by Defendants P. Mejias Cleaning Service and myself in accordance with the Settlement Agreement entered into between these parties pending in the United States District Court for the Southern District of New York, bearing docket number 18-cv-01699 (DCF) (the "Litigation") and hereby authorize Plaintiffs or their heirs, executors, administrators, or assigns to enter

judgment for that sum against P. Mejias Construction Corp. or Pedro Mejias, as an individual.

4. This Confession of Judgment is for a debt justly due to Plaintiffs pursuant to the Settlement Agreement.

5. The Settlement Agreement arises out of the above-captioned action, which was settled pursuant to a written agreement approved by the United States District Court, Southern District of New York.

6. We represent our understanding that upon P. Mejias Cleaning Service. Corp.'s and P. Mejias' breach of the Settlement Agreement, Plaintiffs shall have the unqualified right to cause this Confession of Judgment to be docketed and entered in this Court as a judgment against P. Mejias Cleaning Service. Corp. and myself, jointly and severally, against all property, of any kind, that we have, collectively or individually, have any ownership interest.

7. The original of this Affidavit of Confession of Judgment shall remain in the possession of Plaintiffs' counsel, The Law Offices of Jacob Aronauer, and the original shall be destroyed upon completion of the payment obligations contained in the Stipulation of Settlement entered into between the parties. Within thirty days of receiving the final payment under the Stipulation of Settlement, Plaintiffs' attorney will send an affirmation to P. Mejias Cleaning Service Corp. and Pedro Mejias, individually stating that P. Mejas Cleaning Service Corp. and Pedro Mejas have fully satisfied the conditions of the Stipulation of Settlement and that the original Confession of Judgment and any copies thereof have been destroyed.

_____
Pedro Mejias, individually
and on behalf of P. Mejias Cleaning Service Corp.

Dated:_____

Sworn to before me this
day of _____, 2018

_____
Notary Public

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

ANDRES VINAS AND JHON VINAS ,

           Plaintiff,

   -against-

PROCIDA CONSTRUCTION CORP.,
P. MEJIAS CLEANING SERVICE and
PEDRO MEJIAS,

           Defendants.

-------------------------------------------------------------------X

**18-cv-01699 (DCF)**

AFFIDAVIT OF
CONFESSION OF
JUDGMENT

STATE OF NEW YORK   )
            ): ss:
COUNTY OF _____ )

Mario Procida, being duly sworn, deposes and says:

1. I am the owner of Procida Construction Corp. in the above-entitled action.

2. I currently reside in ____County, New York.

3. On behalf of Defendant Procida Construction Corp., I hereby confess judgment in this Court in favor of the Plaintiffs Andres Vinas and Jhon Vinas in an amount of Twenty-Five Thousand Dollars and Zero Cents ($25,000.00) minus the amount of partial payments made by Defendant Procida Construction Corp. in accordance with the Settlement Agreement entered into between these parties pending in the United States District Court for the Southern District of New York, bearing docket number 18-cv-01699 (DCF) (the "Litigation") and hereby authorize Plaintiffs or their heirs, executors, administrators, or assigns to enter judgment for that sum against Procida Construction Corp.

4. This Confession of Judgment is for a debt justly due to Plaintiffs pursuant to the Settlement Agreement.

5. The Settlement Agreement arises out of the above-captioned action, which was settled pursuant to a written agreement approved by the United States District Court, Southern District of New York.

6. We represent our understanding that upon Procida Construction Corp.'s breach of the Settlement Agreement, Plaintiffs shall have the unqualified right to cause this Confession of Judgment to be docketed and entered in this Court as a judgment against Procida Construction Corp, against all property, of any kind, of Procida Construction Corp.

7. The original of this Affidavit of Confession of Judgment shall remain in the possession of Plaintiffs' counsel, The Law Offices of Jacob Aronauer, and the original shall be destroyed upon completion of the payment obligations contained in the Stipulation of Settlement entered into between the parties. Within thirty days of receiving the final payment under the Stipulation of Settlement, Plaintiffs' attorney will send an affirmation to Procida Construction Corp.'s attorney stating that Procida Construction Corp. has fully satisfied the conditions of the Stipulation of Settlement and that the original Confession of Judgment and any copies thereof have been destroyed.

_____
Mario Procida, individually
and on behalf of Procida Construction Corp.

Dated:_____

Sworn to before me this
   day of _____, 2018

_____
Notary Public

# EXHIBIT 1

**Pedro Mejias Cleaning Services**
Jhon Vinas Employee Summary Sheet
Prepared By: Kelvin Basdeo

PROCIDA CONSTRUCTION CORP.

| Project | Payroll No. | Week Ending | Name | Siso Hours | Payroll Hours | Classification | Rate + Fringe ($41.75+$20.87) | Davis Bacon Rate ($41.75+$20.87) | Overtime Rate ($62.63+$20.87) | Gross Earned | Gross Paid | # Days Worked |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TP West | 14 | 8/10/17 | Jhon Vinas | 7.5 | 7.5 | Painter | $ 62.62 | $ 62.62 | $ 83.49 | $ 469.65 | $ 469.65 | 1 |
| TP West | 19 | 9/14/17 | Jhon Vinas | 11.5 | 11.5 | Painter | $ 62.62 | $ 62.62 | $ 83.49 | $ 720.13 | $ 720.13 | 2 |
| TP West | 20 | 9/21/17 | Jhon Vinas | 3.5 | 3.5 | Painter | $ 62.62 | $ 62.62 | $ 83.49 | $ 219.17 | $ 219.17 | 1 |
| | | | TP WEST TOTALS: | 22.5 | 22.5 | | | | | $ 1,408.95 | $ 1,408.95 | 4 |
| Draper | 39 | 7/20/17 | Jhon Vinas | 6 | 6 | Painter | $ 62.62 | $ 62.62 | $ 83.49 | $ 375.72 | $ 375.72 | 1 |
| Draper | 40 | 7/27/17 | Jhon Vinas | 6.5 | 6.5 | Painter | $ 62.62 | $ 62.62 | $ 83.49 | $ 407.03 | $ 407.03 | 1 |
| Draper | 48 | 9/21/17 | Jhon Vinas | 26.5 | 26.5 | Painter | $ 62.62 | $ 62.62 | $ 83.49 | $ 1,659.43 | $ 1,659.43 | 4 |
| Draper | 49 | 9/28/17 | Jhon Vinas | 44 | 44 | Painter | $ 62.62 | $ 62.62 | $ 83.49 | $ 2,838.76 | $ 2,838.80 | 6 |
| Draper | 50 | 10/5/17 | Jhon Vinas | 43.67 | 43.67 | Painter | $ 62.62 | $ 62.62 | $ 83.49 | $ 2,811.21 | $ 2,811.06 | 6 |
| Draper | 51 | 10/12/17 | Jhon Vinas | 45 | 45 | Painter | $ 62.62 | $ 62.62 | $ 83.49 | $ 2,922.25 | $ 2,922.30 | 6 |
| Draper | 52 | 10/19/17 | Jhon Vinas | 30 | 44.5 | Painter | $ 62.62 | $ 62.62 | $ 62.62 | $ 1,878.60 | $ 2,880.55 | 6 |
| Draper | 53 | 10/26/17 | Jhon Vinas | 36.5 | 36.5 | Painter | $ 62.62 | $ 62.62 | $ 62.62 | $ 2,285.63 | $ 2,285.63 | 5 |
| Draper | 54 | 11/2/17 | Jhon Vinas | 43 | 43 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 2,755.30 | $ 2,755.30 | 6 |
| Draper | 55 | 11/9/17 | Jhon Vinas | 44.5 | 44.5 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 2,880.55 | $ 2,880.55 | 6 |
| Draper | 56 | 11/16/17 | Jhon Vinas | 37.5 | 37.5 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 2,348.25 | $ 2,348.25 | 5 |
| Draper | 57 | 11/23/17 | Jhon Vinas | 14.5 | 14.5 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 907.99 | $ 907.99 | 2 |
| Draper | 58 | 11/30/17 | Jhon Vinas | 7.5 | 7.5 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 469.65 | $ 469.65 | 1 |
| | | | DRAPER TOTALS: | 385.17 | 399.67 | | | | | $ 24,540.37 | $ 25,542.26 | 55 |
| Lynn | 18 | 6/15/17 | Jhon Vinas | 15 | 15 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 939.30 | $ 939.30 | 2 |
| Lynn | 19 | 6/22/17 | Jhon Vinas | 37.5 | 37.5 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 2,348.25 | $ 2,348.25 | 5 |
| Lynn | 20 | 6/29/17 | Jhon Vinas | 37.5 | 37.5 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 2,348.25 | $ 2,348.25 | 5 |
| Lynn | 21 | 7/6/17 | Jhon Vinas | 30 | 30 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 1,878.60 | $ 1,878.60 | 4 |
| Lynn | 22 | 7/13/17 | Jhon Vinas | 37.5 | 37.5 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 2,348.25 | $ 2,348.25 | 5 |
| Lynn | 23 | 7/20/17 | Jhon Vinas | 37 | 37 | Painter | $ 62.62 | $ 62.62 | $ 93.93 | $ 2,410.87 | $ 2,410.87 | 5 |
| Lynn | 24 | 7/27/17 | Jhon Vinas | 30 | 30 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 1,878.60 | $ 1,878.60 | 4 |
| Lynn | 25 | 8/3/17 | Jhon Vinas | 30 | 30 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 1,878.60 | $ 1,878.60 | 4 |
| Lynn | 26 | 8/10/17 | Jhon Vinas | 7.5 | 7.5 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 469.65 | $ 469.65 | 1 |
| Lynn | 27 | 8/17/17 | Jhon Vinas | 30 | 30 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 1,941.24 | $ 1,941.24 | 4 |
| Lynn | 28 | 8/24/17 | Jhon Vinas | 30 | 30 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 1,878.60 | $ 1,878.60 | 4 |
| Lynn | 29 | 8/31/17 | Jhon Vinas | 37.08 | 37.08 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 2,321.95 | $ 2,322.14 | 5 |
| Lynn | 30 | 9/7/17 | Jhon Vinas | 30 | 45.33 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 1,878.60 | $ 2,950.04 | 6 |
| Lynn | 31 | 9/14/17 | Jhon Vinas | 22.5 | 22.5 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 1,408.95 | $ 1,408.95 | 3 |
| Lynn | 32 | 9/21/17 | Jhon Vinas | 7.5 | 7.5 | Painter | $ 62.62 | $ 62.62 | $ 83.50 | $ 469.65 | $ 469.65 | 1 |
| | | | LYNN TOTALS: | 419.08 | 434.41 | | | | | $ 26,399.36 | $ 27,470.99 | 58 |
| Selis | 103 | 5/25/17 | Jhon Vinas | 15 | 15 | Painter | $ 62.62 | $ 62.62 | $ 83.49 | $ 939.30 | $ 939.30 | 2 |
| Selis | 104 | 6/1/17 | Jhon Vinas | 51 | 51 | Painter | $ 62.62 | $ 62.62 | $ 93.93 | $ 3,538.03 | $ 3,538.03 | 7 |
| Selis | 105 | 6/8/17 | Jhon Vinas | 54 | 54 | Painter | $ 62.62 | $ 62.62 | $ 93.93 | $ 3,819.82 | $ 3,819.82 | 7 |
| Selis | 106 | 6/15/17 | Jhon Vinas | 22.5 | 22.5 | Painter | $ 62.62 | $ 62.62 | $ 83.49 | $ 1,408.95 | $ 1,408.95 | 3 |
| Selis | 114 | 8/10/17 | Jhon Vinas | 24.42 | 24.42 | Painter | $ 62.62 | $ 62.62 | $ 83.49 | $ 1,529.18 | $ 1,529.18 | 3 |
| Selis | 115 | 8/17/17 | Jhon Vinas | 13 | 13 | Painter | $ 62.62 | $ 62.62 | $ 83.49 | $ 814.06 | $ 814.06 | 2 |
| Selis | 116 | 8/24/17 | Jhon Vinas | 5.5 | 5.5 | Painter | $ 62.62 | $ 62.62 | $ 83.49 | $ 344.41 | $ 344.41 | 1 |
| | | | JHON VINAS TOTALS: | 185.42 | 185.42 | | | | | $ 12,393.75 | $ 12,393.75 | 25 |
| | | | | | | | | | | | | |
| | | | COMBINED TOTALS: | 1012.17 | 1042 | | | | | $ 64,742.43 | $ 66,815.95 | 142 |

7/19/18

| Amt Paid in Cash Per Employee ($200 per day) | Gross Owed Per Employee |
|---|---|
| $ 200.00 | $ 269.65 |
| $ 400.00 | $ 320.13 |
| $ 200.00 | $ 19.17 |
| **$ 800.00** | **$ 608.95** |
| $ 200.00 | $ 175.72 |
| $ 200.00 | $ 207.05 |
| $ 800.00 | $ 859.43 |
| $ 1,200.00 | $ 1,638.76 |
| $ 1,200.00 | $ 1,611.21 |
| $ 1,200.00 | $ 1,722.25 |
| $ 1,200.00 | $ 678.60 |
| $ 1,000.00 | $ 1,285.63 |
| $ 1,200.00 | $ 1,555.30 |
| $ 1,200.00 | $ 1,680.55 |
| $ 1,000.00 | $ 1,348.25 |
| $ 400.00 | $ 507.99 |
| $ 200.00 | $ 269.65 |
| **$ 11,000.00** | **$ 13,540.37** |
| $ 400.00 | $ 539.30 |
| $ 1,000.00 | $ 1,348.25 |
| $ 1,000.00 | $ 1,348.25 |
| $ 800.00 | $ 1,078.60 |
| $ 1,000.00 | $ 1,348.25 |
| $ 1,000.00 | $ 1,410.87 |
| $ 800.00 | $ 1,078.60 |
| $ 800.00 | $ 1,078.60 |
| $ 200.00 | $ 269.65 |
| $ 800.00 | $ 1,141.24 |
| $ 800.00 | $ 1,078.60 |
| $ 1,000.00 | $ 1,321.95 |
| $ 1,200.00 | $ 678.60 |
| $ 600.00 | $ 808.95 |
| $ 200.00 | $ 269.65 |
| **$ 11,600.00** | **$ 14,799.36** |
| $ 400.00 | $ 539.30 |
| $ 1,400.00 | $ 2,138.03 |
| $ 1,400.00 | $ 2,419.82 |
| $ 600.00 | $ 808.95 |
| $ 600.00 | $ 929.18 |
| $ 400.00 | $ 414.06 |
| $ 200.00 | $ 144.41 |
| **$ 5,000.00** | **$ 7,393.75** |
| | |
| **$ 28,400.00** | $ 36,342.43 |

Pedro Mejia Cleaning Services
Adrian Vera Employee Summary Sheet
Prepared By: Adrian Bastos

PROCIDA CONSTRUCTION CORP.

7/29/18

| Project | Payroll No. | Week Ending | Name | Site Hours | Payroll Hours | Classification | Rate + Fringe (S41.79+20.87) | Davis Bacon Rate (S41.79+20.87) | Overtime Rate (S62.69+20.87) | Gross Earned | Gross Paid | Gross Owed per CPR | # Days Worked | Amt Paid In Cash Per Employee ($150 per day) | Gross Owed Per Employee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Depot | 52 | 10/24/17 | Andrew Vera | 30 | 30 | Painter | $ | 62.62 | $ | 1,878.60 | $ 1,878.60 | $ | 4 | $ 600.00 | $ 1,278.60 |
| Depot | 53 | 12/28/17 | Andrew Vera | 14 | 14 | Painter | $ | 62.62 | $ | 62.62 | $ 21.62 | $ 876.68 | $ 876.68 | $ | 2 | $ 300.00 | $ 576.68 |
| | | | TOTALS | 44 | 44 | | | | | | $ 2,755.28 | $ 2,755.28 | $ | 6 | $ 900.00 | $ 1,855.28 |